**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| CONSANDRA AMERSON, | Case No.: 2:10-cv-1071-RLH-RJJ |
| Plaintiff, | **O R D E R** |
| vs. | (Motion for Summary Judgment – #41) |
| CLARK COUNTY, et al., | |
| Defendants. | |

    Before the Court is Defendant Clark County's ("Clark County") Motion for Summary Judgment (#41, November 1, 2013). The Court has also considered Plaintiff Consandra Amerson's ("Amerson") Response (#44, December 16, 2013), and Clark County's Reply. (#53, December 31, 2013). For the reasons discussed below, the Court grants the motion.

**BACKGROUND**

**1.**    **Factual Background**

    This case arises out of alleged disability discrimination. In 1997, Amerson was hired by Clark County as Juvenile Probation Officer. In June 2007, during a training course, Amerson suffered an on-the-job accidental injury to her cervical and lumbar spinal areas. In January 2008, Amerson underwent spinal reconstruction surgery. Amerson's physician imposed

restrictions on her work prescribing only light duty work, no repetitive back or neck motions, and no lifting of weight greater than 20 pounds. Additionally, Amerson's physician determined that she would be unable to work as a Juvenile Probation Officer in the foreseeable future due to the restrictions.

In May 2008, Amerson received a letter from Clark County indicating that pursuant to county policy, if Amerson could not return to work as a Juvenile Probation Officer in full duty capacity by June 19, the county would institute medical separation proceedings. Once Clark County was apprised of Amerson's restrictions by her physician, Clark County offered Amerson a lateral transfer to the Department of Family Services. However, Clark County removed Amerson from the position one week later because one of the essential duties of the position in the Department of Family Services position was a restricted activity Amerson could not perform.

In July 2008, Clark County began the medical separation procedures, which required a 30-day search for an alternative position for which Amerson would be qualified. After the 30-day search yielded no alternative positions, Clark County scheduled a medical separation pre-termination hearing ("Step I"). During the Step I hearing, Amerson was told she might be eligible for Public Employees' Retirement System ("PERS") disability retirement. Once she determined she was approved for PERS disability retirement, Clark County told Amerson that she would need to send a letter to Clark County indicating her intent to pursue medical retirement so that medical separation would no longer be necessary. Additionally, Amerson was told that she could pursue an Americans with Disabilities Act ("ADA") accommodation by contacting the Clark County Office of Diversity. Amerson failed to do either and accordingly, Clark County scheduled another Step I hearing.

Before the second Step I hearing, Amerson met with the Office of Diversity and expressed her desire to continue working with accommodations. The Office of Diversity determined Amerson had a disability under the ADA, but could not perform the duties of Juvenile Probation Officer with or without accommodation. Thus, the Office of Diversity recommended

1   medical separation. Another 30-day search for an alternative position for which Amerson would be
2   qualified took place. However, there was no vacant position for which Amerson qualified.
3   Ultimately, Amerson was medically separated.

4         Amerson instituted a grievance against the medical separation ("Step II"). During
5   the Step II hearing, Amerson was told that three vacant positions had been identified, but that she
6   did not qualify for the positions because they required defensive tactics, which was in violation of
7   her restrictions. As Amerson did not qualify for the vacant positions, the Step II grievance was
8   denied. However, as Amerson's restrictions prevented her from returning to her position as a
9   Juvenile Probation Officer, and Clark County did not have a position for which she qualified,
10  Amerson was eligible for vocational rehabilitation services under the Nevada Vocational
11  Rehabilitation statutes. Clark County offered Amerson vocational rehabilitation but Amerson
12  refused to sign the vocational rehabilitation program agreement because she did not have time to
13  review it prior to signing. Her failure to sign the program agreement caused Clark County to
14  terminate her vocational rehabilitation services. Amerson appealed the termination of vocational
15  rehabilitation services. Eventually, Clark County settled Amerson's termination appeal pursuant to
16  a Stipulated Settlement and Order ("Vocational Rehabilitation Settlement"), whereby Amerson
17  would receive $13,000.00 as a lump-sum vocational rehabilitation buy-out in exchange for
18  dismissing her appeal.

19        The Vocational Rehabilitation Settlement provided that: "the disputed issues and
20  contested matters involved in [the] appeal [would] be settled and resolved," Amerson had been
21  employed by Clark County as a Juvenile Probation Officer, Amerson "sustained an industrial
22  injury by accident" while on the job, Amerson "was found to have permanent restrictions . . . and
23  vocational rehabilitation maintenance benefits were instituted," "her restrictions could not be
24  accommodate (sic) by her employer, and that [Amerson] was placed in vocational rehabilitation."
25  Additionally, the Vocational Rehabilitation Settlement stated that Amerson wished to elect a
26  lump-sum buyout "rather than proceed with vocational rehabilitation services," Amerson

AO 72
(Rev. 8/82)

1   acknowledged receipt of the buyout was "to obtain or develop a job within her physical
2   restrictions," Clark County would pay Amerson $13,000.00 to buyout her claim to vocational
3   rehabilitation services, the agreement was to settle facts particular to the appeal, and the appeal
4   would be dismissed with prejudice. Clark County and Amerson, both represented by counsel,
5   signed the Vocational Rehabilitation Settlement and the agreement became final three-days later.
6   Clark County mailed Amerson a check for $13,000.00 to fulfill the terms of the agreement.
7   　　　　　Despite the Vocational Rehabilitation Settlement, Amerson continues to maintain
8   that Clark County could have accommodated her disabilities by placing her in alternative
9   positions.

10   **2.   Procedural Background**

11   　　　　　Amerson filed her Complaint against Clark County and its affiliated departments in
12   July 2010.  (#1). Amerson alleged that Clark County violated the ADA when it failed to
13   accommodate her disability by reassigning her to a sedentary position and that Clark County
14   constructively terminating her by forcing her to medically retire. (*Id.*) After filing its answer, Clark
15   County moved to dismiss the complaint arguing that Amerson was collaterally estopped from
16   disputing Clark County's ability to accommodate her disability because of the stipulations in the
17   Vocational Rehabilitation Settlement.  (#13).  The Court granted the motion to dismiss, (#21), and
18   Amerson appealed.  (#25).  Citing *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806
19   (1999), the Ninth Circuit reversed and remanded the case because Amerson "must have an
20   opportunity to provide a 'sufficient explanation' for the contradiction presented by the stipulated
21   admission and her ADA claim."  (#36 at 2).  On remand, Clark County has moved for summary
22   judgment.

**DISCUSSION**

23
24   **1.   Legal Standard**

25   　　　　　The purpose of summary judgment is to avoid unnecessary trials when there is no
26   dispute as to the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d

1468, 1471 (9th Cir.1994). Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288–89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

   The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). Summary judgment for a

defendant is appropriate when the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

**2.      Analysis**

      **a.      Effect of the Vocational Rehabilitation Settlement on Plaintiff's ADA Claim**

Clark County argues it is not liable under the ADA because Amerson stipulated in the Vocational Rehabilitation Settlement that her disability could not be accommodated, thus negating an essential element of her ADA claim. Amerson counters that under *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999), she has provided an explanation for any contradictions between the Vocational Rehabilitation Settlement and her ADA claims sufficient to overcome summary judgment.[1] Amerson maintains that there was no admission that Clark County could not accommodate her restrictions and that the $13,000.00 Vocational Rehabilitation Settlement was insufficient consideration to waive her ADA claim.

In *Cleveland*, the Supreme Court considered "the legal effect upon an ADA suit of the application for, or receipt of, disability benefits." *Id.* at 800. The Court held that where statements made in support of a SSDI claim involved a "context-related legal conclusion," rather than a "purely factual matter," the Court was required to determine whether the SSDI claim created a rebuttable presumption to judicially estop the ADA claim. *Id.* at 802. To determine the legal effect of the SSDI claim on the ADA claim, the Court employed a two-part analysis. *Id.* First, the Court determined whether, as a legal matter, a claim under the ADA "inherently conflict[ed]" with an SSDI claim to warrant a "negative presumption" against the ADA claim. *Id.* at 802–05. Then, after finding no inherent conflict, the Court analyzed whether the SSDI claim "genuinely" conflicted with the ADA claim so as to "negate an essential element of [the] ADA claim." *Id.* at

---

[1] Amerson also identifies an additional contradiction between her declaration in support of her application for PERS disability retirement benefits. However, Clark County does not contest those statements and the Court declines to address them.

805–06. The Court reasoned that if there was a genuine conflict, a plaintiff could overcome summary judgment by offering a sufficient explanation for any inconsistency. *Id.* at 806; *see also Smith v. Clark Cnty. School Dist.*, 727 F.3d 950, 956 (extending *Cleveland*'s application to state and private disability benefits.) However, the Court emphasized that the plaintiff's explanation for the contradiction must "warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless 'perform the essential functions' of her job, with or without 'reasonable accommodation.'" *Id.* at 806.

Where a plaintiff adequately explains an apparent contradictory statement, the contradiction does not preclude the plaintiff's ADA claim. *Id.* In *Cleveland*, the plaintiff sought and obtained Social Security Disability Insurance (SSDI) benefits, claiming that she was "unable to work" due to her disability. *Id.* at 799. Then, plaintiff filed suit under the ADA contending that her former employer discriminated against her on account of her disability because she could perform the essential functions of her job with reasonable accommodation. *Id.* Conducting the first step in the analysis, the Supreme Court recognized that there are many situations in which an SSDI claim and an ADA claim can comfortably exist side by side, and thus there is no inherent conflict. *Id.* Then turning to the second prong of the analysis, the Supreme Court found there was a genuine conflict between the statements under the SSDI claim that Cleveland was "unable to work" and the ADA claim where she stated she could work with accommodations. *Id.* However, the Supreme Court accepted Cleveland's explanation that because the SSDI statements were made in a forum that does not consider reasonable accommodation, it was both true that she was "unable to work" without reasonable accommodation in the SSDI context, and that she would be able to work with reasonable accommodation in the ADA context. *Id.* at 797, 807. Based on her sufficient explanation for the inconsistency, the Court held a reasonable juror could reconcile the apparent contradiction. *Id.*

Here, however, Amerson's explanation is insufficient to warrant a reasonable juror's concluding that, despite the contradiction, she could nonetheless perform the essential

7

functions of her job, with or without reasonable accommodation. *Id.* at 807. Under *Cleveland*'s framework, the Court must first determine whether a claim under the Nevada Vocational Rehabilitation statutes inherently conflicts with an ADA claim. The Court finds that it does not because the Nevada Vocational Rehabilitation statutes only consider one of reasonable accommodations available under the ADA, namely reassignment.

Under the Nevada Vocational Rehabilitation statutes,

> [A]n injured employee is not eligible for vocational rehabilitation services, unless:
> (a) The treating physician or chiropractor approves the return of the injured employee to work but imposes permanent restrictions that prevent the injured employee from returning to the position that the employee held at the time of his or her injury;
> *(b) The injured employee's employer does not offer employment that:*
>  *(1) The employee is eligible for considering the restrictions imposed pursuant to paragraph (a)*;
>  (2) Provides a gross wage that is equal to or greater than 80 percent of the gross wage that the employee was earning at the time of injury; and
>  (3) Has the same employment benefits as the position of the employee at the time of his or her injury; and
> (c) The injured employee is unable to return to gainful employment with any other employer at a gross wage that is equal to or greater than 80 percent of the gross wage that the employee was earning at the time of his or her injury.

Nev. Rev. Stat. § 616C.590(1)(emphasis added).

Whereas the Nevada Vocational Rehabilitation statutes address only reassignment to another position, the ADA includes reassignment to a vacant position and several other accommodations, such as making existing facilities readily accessible, job restructuring, part-time or modified work schedules, acquisition or modification of equipment or devices, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations. *Cf.* Nev. Rev. Stat. § 616C.590(1)(b)(1) *with* 42 U.S.C. § 12111(9). Thus, there are many situations in which a Nevada Vocational Rehabilitation claim and an ADA claim can comfortably exist side by side, i.e., where the plaintiff seeks any ADA accommodation other than reassignment. As there are hypothetical situations where both claims could co-exist, there is no inherent conflict.

8

Turning to the second prong of the analysis, the Court determines Amerson's stipulations in the Vocational Rehabilitation Settlement genuinely conflict with her ADA claim, and that her explanation is inadequate. The stipulation in the Vocational Rehabilitation Settlement states that Clark County could not accommodate Amerson's restrictions. Amerson's ADA claim requires a finding that Clark County could accommodate Amerson's restrictions. These statements are in genuine conflict. Therefore, Amerson is required to explain the contradiction such that a reasonable juror could reconcile the apparent contradiction.

Amerson's explanation attempts to split hairs over who made the determination that Clark County could not accommodate her restrictions. However, it does not matter who made the determination. The ADA reassignment accommodation Amerson seeks is also offered by the Nevada Vocational Rehabilitation statute. A *necessary prerequisite* to obtaining vocational rehabilitation is that the "employer *does not offer* employment that the employee is eligible for considering the restrictions." Nev. Rev. Stat. § 616C.590(1)(b)(1) (emphasis added). Amerson's statement that her employer could not accommodate her, which qualified her for vocational rehabilitation, also disqualifies her for the reassignment accommodation she seeks under the ADA. Clark County cannot offer Amerson reassignment to a position it does not have. In short, Amerson would not even qualify for vocational rehabilitation or the lump sum buyout she obtained if Clark County could have accommodated her restrictions by offering reassignment. Thus, even if Clark County unilaterally determined that it could not accommodate Amerson by offering her an alternative position, Amerson necessarily agreed with that determination when she accepted the lump-sum buyout.

This case is unlike *Cleveland* where the apparent contradiction was easily explained based on the legal differences between SSDI and ADA claims. Here, as applied to the reassignment accommodation Amerson seeks, the Nevada Vocational Rehabilitation statutes and the ADA are identical. Amerson could have obtained reassignment to a sedentary position through the Nevada Vocational Rehabilitation statutes. Instead, Amerson chose to settle her vocational

9

rehabilitation appeal benefitting to the tune of $13,000.00. Now, Amerson seeks to disavow the statement that Clark County could not accommodate her because it did not offer a reassignment position, a statement she was required to make under Nevada law to obtain the $13,000.00 benefit, to pursue the same reassignment accommodation under the ADA. Even taking the facts in the light most favorable to Amerson and accepting her explanation as true, the structure of the Nevada Vocational Rehabilitation statutes requires a determination that Clark County could not accommodate Amerson's restrictions by offering reassignment. Thus, the determinations required to support the lump-sum buyout Amerson received are directly contradictory and inconsistent with her assertion that she could be accommodated through reassignment to other positions.

Amerson has not sufficiently explained the contradiction such that a reasonable juror could reconcile the discrepancy and find in her favor. Therefore, Amerson's pursuit and receipt of the Vocational Rehabilitation Settlement and her stipulations in that agreement negate an essential element of her ADA claim, and summary judgment is warranted in favor of Clark County.

### b. "Qualified Individual" Under the ADA

Assuming *arguendo* that Amerson's stipulations in the Vocational Rehabilitation Agreement do not negate her ADA claim, Clark County argues Amerson is still not a "qualified individual" under the ADA because she could not perform the essential functions of the three other identified open positions, even with reasonable accommodations. Amerson responds that she is a qualified individual because Clark County could have easily accommodated her by placing her in a position requiring only sedentary work. Amerson identifies several positions that would require only sedentary work and asserts there is a genuine issue of material fact as to whether Clark County could have reassigned her to a sedentary job which was contemporaneously available or would have become available within a reasonable period. Clark County responds that Amerson has not shown by admissible evidence that the positions she identifies were available or would have

become available within a reasonable period, and therefore she has failed to set forth specific facts showing that there is a genuine issue for trial.[2]

To prevail on an ADA claim, a plaintiff must show (1) that she is disabled within the meaning of the ADA; (2) that she is a qualified individual with a disability; and (3) that she was discriminated against because of her disability. *See Nunes v. Wal–Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999). A person can be a qualified individual under the ADA if "[s]he can 'perform the essential functions of a reassignment position, with or without reasonable accommodation, even if [she] cannot perform the essential functions of the current position.'" *Dark v. Curry Cnty.*, 451 F.3d 1078, 1089 (9th Cir. 2006) (*quoting Hutton v. Elf Atochem N. Am., Inc.*, 273 F.3d 884, 892 (9th Cir. 2001)); *see also* 42 U.S.C. § 12111(8-9)(noting that reasonable accommodation may include reassignment to a vacant position). The ADA does not, however, "impose a duty to create a new position to accommodate a disabled employee." *Wellington v. Lyon Cnty. School Dist.*, 187 F.3d 1150, 1155 (9th Cir. 1999). "[F]or reassignment to a vacant position to be reasonable, an existing position must be vacant." *Id.* (*citing Willis v. Pac. Maritime Ass'n*, 162 F.3d 561, 567 (9th Cir. 1998)). In determining whether a position is vacant, "an employer must consider not only those contemporaneously available positions but also those that will become available within a reasonable period." *Dark v. Curry Cnty.*, 451 F.3d 1078, 1989-90 (9th Cir. 2006).

Where a position would become available in a reasonable period, reassignment to that vacant position is a reasonable accommodation. *Id.* In *Dark*, the Ninth Circuit found a genuine issue of material fact precluded summary judgment because Dark proffered evidence that certain positions had become available since his termination. The *Dark* Court noted that Dark had not

---

[2] The parties agree that Amerson is disabled and that she could not perform the essential functions of her prior position, Juvenile Probation Officer, even with accommodation. Therefore, the question is whether Amerson could perform the essential functions of a reassignment position with accommodation.

11

1   specified when the jobs became available but his mere allegation that a position became available
2   did not require any greater specificity. *Id.*

3         There is no dispute that Amerson could not have returned to her prior employment
4   as a Juvenile Probation Officer. Nor is there any dispute that Amerson's restrictions prevented her
5   from working in the three positions Clark County identified as within Amerson's skill set.

6         Here, Amerson has failed to show a genuine issue of material fact by admissible
7   evidence sufficient to preclude summary judgment in favor of Clark County. Clark County has
8   carried its burden to show that Amerson does not have enough evidence to show she is a qualified
9   individual under the ADA. Clark County has produced evidence that searches were conducted and
10  no positions for which Amerson would qualify were available. (#41, Ex. BB, at 2). Moreover,
11  Clark County has produced evidence that although some people had been placed in alternative
12  positions in the past, those people had been moved "over ten years ago and those positions were
13  phased out as the individuals placed into them retired or resigned from County employment." *Id.*
14  Thus, the burden shifts to Amerson to set forth specific facts to show a genuine issue for trial.[3]

15        Amerson has failed to meet her burden. Regardless of whether Clark County had
16  accommodated other disabled employees in the past, Amerson must still prove at trial that there
17  was a vacant position for which she was eligible. Unlike *Dark*, where Dark alleged that a position
18  became available, here Amerson has not alleged that any position was available or became
19  available.  Although Amerson lists several positions she "believes" she "could have" done,
20  nowhere in her affidavit or any attached exhibits does Amerson allege or show that any alternative
21  position was vacant at the time of her termination or within a reasonable period after her

---

[3] Amerson complains in a footnote that Clark County has "refused to produce any documents about available jobs" and "refused to produce any information about employees . . . who were accommodated with alternative jobs." (#44 at 16, n.3). However, the Court granted Amerson additional time for discovery and not a single motion to compel was filed in this case. (#40). As discovery has long-since closed and Amerson did not seek to compel the documents needed to prevail on this element, she has essentially conceded that she will be unable to prove this point at trial.

termination. Amerson has failed to show a genuine issue of material fact for trial and has failed to make a showing sufficient to establish the existence of an element essential to her case. Therefore, on this alternate ground, summary judgment in favor of Clark County is warranted.

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Defendant Clark County's Motion for Summary Judgment (#41, November 1, 2013) is GRANTED. The Clerk of the Court is ordered to close this case.

Dated: January 21, 2014.

_____
**ROGER L. HUNT**
**United States District Judge**